IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID YOUNG, | ) | CASE NO. 1:13CV00872 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL, | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff David Young ("Plaintiff" or "Young") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental social security income ("SSI").  Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

As discussed below, the ALJ failed to build an accurate and logical bridge between the medical evidence and his determination that Young's impairments did not meet the Step Two *de minimis* standard to qualify as severe impairments.  The ALJ failed to discuss Young's medically determinable impairments of drop foot, osteoarthritis, and diabetic peripheral polyneuropathy. Additionally, the ALJ failed to explain fully his reasons for giving little weight to the opinion of Dr. Bradley McCrady, nor did the ALJ explain how McCrady's opinion, even when given little weight, would not warrant finding Young's impairments to be severe under the *de minimis* standard.  Accordingly, the Commissioner's decision should be **REVERSED AND REMANDED.**

1

## I. Procedural History

Young protectively filed[1] his applications for DIB and SSI on May 19, 2008, alleging a disability onset date of May 14, 2008. Tr. 179. He alleged disability based on high blood pressure, diabetes, and a leg impairment.[2] Tr. 184. Young's application was denied by the state agency initially and on reconsideration. Tr. 75-88. On February 2, 2009, he requested an administrative hearing. Tr. 89-90. On September 27, 2010, a hearing was held before Administrative Law Judge ("ALJ") J. Richard Stables. Tr. 29-5.

In his October 5, 2010, decision, the ALJ determined that Young does not have a severe impairment or combination of impairments and is not disabled. Tr. 19, 23. Young requested review of the ALJ's decision by the Appeals Council. Tr. 11-12. On November 14, 2011 the Appeals Council denied Young's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 4-10. On March 13, 2013, the Social Security Administration granted Young's request for an extension of time to file a civil action until April 18, 2013. Tr. 1. On April 18, 2013, Young filed his Complaint with this Court. Doc. 1.

## II. Evidence

### A. Personal and Vocational Evidence

Young was born in 1959. Tr. 32. He completed a GED. Id. He last worked in 2005. Tr. 33. Young previously worked as a janitor, a welder, a metal polisher and a garbage collector. Tr. 33-36. Young stated that he stopped working after he went to jail and could

---

[1] Protective filing is a Social Security term for the first time you contact the Social Security Administration to file a claim for disability or retirement. Protective filing dates may allow an individual to have an earlier application date than the actual signed application date. This is important because protective filing often affects the entitlement date for disability and retirement beneficiaries along with their dependents.
http://www.ssdrc.com/disabilityquestionsmain20.html (Last visited 3/05/14).

[2] Young listed "shot in leg" as one of his disabilities. Tr. 184.

2

not find a good job. Tr. 411. Young also stated that, beginning in 2008, he claimed disability primarily due to his diabetes. Tr. 39.

## B. Medical Evidence[3]

Young treated with Dr. Gaby S. El-Khoury from 2008 through 2010 primarily for control of his diabetes, hypertension, and hyperlipidemia. Tr. 303-321, 329, 335-338, 374-384, 400-403, 443-446, 465-468. On May 28, 2008, Dr. El-Khoury stated in treatment notes that Young was "employable." Tr. 316. Young attended a psychological consultative examination on November 12, 2008, with Michael Leach, Ph.D. Tr. 343. At that exam, Young stated that he has drop foot and it is hard for him to go from a sitting to a standing position. Id. Dr. Leach observed Young walking slow with a limp. Tr. 344. Dr. Leach also observed Young exhibiting pain symptoms and having difficulty when moving from a sitting to a standing position. Id.

In December 2008, Dr. El-Khoury noted that Young likely had Obstructive Sleep Apnea ("OSA") and referred him to Dr. Vidya Krishnan for sleep evaluation. Tr. 369. In February 2009, Young received a Continuous Positive Airway Pressure ("CPAP") mask and enrolled in a home positive airway pressure study. Tr. 377, 395. On March 20, 2009, during a follow up with Dr. Moayyed Moallem on his sleep study, Dr. Moallem reported that Young had an optimal response to the CPAP mask. Id. After using the mask, Young reported he was more refreshed, more energetic, had no snoring or apneas. Id. Young also reported that he did not use the mask every night because he can't watch television with the mask and normally fell asleep while watching television. Id.

---

[3] Young only challenges the ALJ's decision with regard to the following conditions: obstructive sleep apnea, left drop foot, osteoarthritis of the right knee, and diabetic peripheral polyneuropathy. Doc. 16, pp. 13-14. Accordingly, the Medical Evidence section is limited to a review of these conditions.

That same day, Young was also referred to Dr. Dillip Pillai after an electrocardiogram noted extra heartbeats. Tr. 392. Dr. Pillai stated that Young denied any chest pain and was "[a]symptomatic from a cardiac standpoint." Id.

On July 9, 2009, during a follow up appointment regarding his OSA management, Young reported that he was using his CPAP regularly and stated that he is sleeping 7-8 hours a night and has had no chest pain or palpitations with CPAP use. Tr. 431. On July 20, 2009, Young returned to Dr. Pillai stated that he has no chest pain or shortness of breath and that he walks daily almost everywhere with no problems. Tr. 427. In October 2009, Jan A. Steinel, CNP, reported that Young had been very poor in complying with his OSA treatment and was instructed to use the CPAP regularly. Tr. 437.

On May 14, 2010, Young presented to Dr. Bradley McCrady. Tr. 495. Young had been referred to Dr. McCrady for a physical capacity evaluation by Dr. El-Khoury. Tr. 495. Dr. McCrady noted that Young had severe foot drop, poor heel to toe walking tolerance, and poor tandem gait. Tr. 495, 497. Dr. McCrady also suspected that Young could have peripheral polyneuropathy. Tr. 497. Young also reported that he was having difficulty bending. Tr. 495. Dr. McCrady stated Young had a "complex case regarding disability, as he has no documentation and not much treatment." Tr. 498. Dr. McCrady determined that he would need to complete more testing prior to making a disability determination. Id.

Young was then sent for an EMG and MRI. On June 9, 2010, Dr. McCrady noted that the EMG test showed peripheral polyneuropathy as well as left side sciatic nerve injury consistent with Young's prior gunshot wound. Tr. 489. On June 25, 2010, Young's MRI showed osteoarthritis in his right knee and a lateral patellar subluxation in his left knee. Tr. 504.

4

In July 2010, Young returned to Dr. El-Khoury due to a rash. Tr. 465-466. Dr. El-Khoury noted a diagnosis of left foot drop and bilateral knee pain. Tr. 465.

On September 8, 2010, Dr. McCrady completed a Medical Source Statement opining that Young could only lift up to fifteen pounds occasionally and five pounds frequently. Tr. 450. Dr. McCrady further opined that Young could only stand and/or walk for ten minutes without interruption for up to one hour a day and could sit for two hours without interruption for a total of eight hours in a day. Id. Dr. McCrady found that Young could rarely or never climb, balance, stoop, crouch, kneel, or crawl and could only occasionally reach or push/pull. Tr. 450-451. Dr. McCrady also noted that McCrady had been prescribed a brace for walking. Tr. 451.

### C. Testimonial Evidence

#### 1. Young's Testimony

At the administrative hearing, Young was represented by counsel and testified that he has a GED and last worked in 2005. Tr. 33. Young testified that he previously worked as a welder, janitor, metal polisher, and a garbage collector. Tr. 33-36. Young confirmed that he claimed disability beginning in 2008 based primarily on his diabetes. Tr. 39.

#### 2. Vocational Expert's Testimony

Vocational Expert Barbara Burk ("VE") testified at the hearing. Tr. 34-36, 38-39. The VE testified that Young's past relevant work as a commercial cleaner was performed as heavy, unskilled work; Young's past work as a polisher/buffer was performed as medium, unskilled; and Young's past work as a garbage collector was performed from medium to very heavy and unskilled. Tr. 34-38. No other questions were asked of the VE.

### III. Standard for Disability

**A. Initial Disability Determination**

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making an initial determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is

capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In his October 5, 2010, decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2009. Tr. 18.

2. The claimant has not engaged in substantial gainful activity since May 14, 2008, the alleged onset date. Tr. 18.

3. The claimant has the following medically determinable impairments; diabetes mellitus with diabetic retinopathy; hypertension with hypertensive retinopathy; hyperlipidemia; obstructive sleep apnea with the use of continuous nocturnal administration of positive air pressure (CPAP); personality disorder, not otherwise specified; and substance addiction disorder (cocaine, alcohol, and cannabis). Tr. 18.

4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments. Tr. 19.

5. The claimant has not been under a disability, as defined in the Social Security Act, from May 14, 2008, through the date of the decision. Tr. 23.

The ALJ's decision became the final decision of the Acting Commissioner when the Appeals Council declined review on November 14, 2011. Tr. 4.

7

### V. Parties' Arguments

**A.     Plaintiff's Arguments**

Young presents one argument for review: he argues that the ALJ erred at Step Two of his evaluation in finding that Young had no severe impairments. Doc. 16, p.13.

**B.     Defendant's Arguments**

In response, the Commissioner argues that substantial evidence supports the ALJ's finding that Young did not have a medically determinable severe impairment within the meaning of the Social Security Act. Doc. 18, p. 9.

### VI. Law & Analysis

**A.     Substantial Evidence**

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Secretary of Health and Human Services,* 889 F.2d 679, 681 (6th Cir.1989) (per curiam) (citations omitted)). A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### B. The ALJ's Step Two Analysis

Young argues that the ALJ erred during Step Two of the sequential evaluation by finding that none of his impairments was severe. Doc. 16, p. 13. At Step Two, the claimant must show that he has an impairment that significantly interferes with his ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c); 416.920(c). Basic work activities are the abilities and aptitudes necessary to do most jobs. 20 C.F.R. § 404.1521. Examples of these include—

>    (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
>    (2) Capacities for seeing, hearing, and speaking;
>
>    (3) Understanding, carrying out, and remembering simple instructions;
>
>    (4) Use of judgment;
>
>    (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
>    (6) Dealing with changes in a routine work setting.

Id.

Plaintiff carries the burden of proving the severity of his impairments. *Allen v. Apfel*, 3 F. App'x 254, 256 (6th Cir. 2001) (*citing Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir.1988)). While Step Two has been described as a "*de minimis* hurdle," the severity requirement can be employed to screen out "claims that are 'totally groundless' solely from a medical standpoint," *Id.* at 862–63 (citation omitted). A claimant's impairment will be construed as non-severe when it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.,* 773 F.2d 85, 90 (6th Cir.1985) (*citing Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)).

Young alleged various physical impairments including: diabetes, high blood pressure, hyperlipidemia, back pain, leg pain, a drop foot, and being overweight.[4] Tr. 20. The ALJ found that Young's impairments or combination of impairments were not severe. Tr. 22-23. Young argues that the ALJ erred in not finding that his left drop foot, osteoarthritis of the right knee, diabetic neuropathy, and his severe obstructive sleep apnea were severe.[5] Doc. 16, pp. 13-16.

**Drop Foot, Osteoarthritis, and Diabetic Neuropathy.** Young argues that his drop foot, osteoarthritis, and diabetic neuropathy impose severe limitations on his walking and standing ability. Id. Young contends that the ALJ erred by not addressing the drop foot, knee problems, or diabetic neuropathy in his opinion and by not adequately addressing Dr. McCrady's opinion. Id. at p. 15.

The ALJ found that Young suffered from several "medically determinable impairments" but did not include drop foot, osteoarthritis, or diabetic neuropathy among those medically determinable impairments despite the fact that Young was diagnosed with these conditions. Tr. 18, ¶ 3. In fact, both Dr. McCrady and Dr. El-Khoury diagnosed Young with drop foot and bilateral knee pain. Tr. 456, 465. The ALJ's opinion states that Young "alleged" that he has drop foot (Tr. 20) but does not note the dual diagnosis or explain why he failed to find drop foot to be a medically determinable impairment.

In addition, Young argues that Dr. McCrady's opinion supports his claim that these conditions are severe impairments. Doc. 16, p. 13; Tr. 450-51. In his September 2010 opinion, Dr. McCrady opined that Young could stand and/or walk for only ten minutes without interruption for up to one hour a day and could sit for two hours without interruption for a total

---

[4] Young also alleged mental impairments; however, Young does not allege that the ALJ erred by finding his mental impairments non-severe.

[5] Young does not argue that the ALJ erred in not finding his other impairments non-severe. Accordingly, those impairments will not be discussed.

of eight hours in a day. Id. Dr. McCrady found that Young could rarely or never climb, balance, stoop, crouch, kneel, or crawl and could only occasionally reach or push/pull. Tr. 450-451. Dr. McCrady also opined that Young would need an at-will sit/stand option. Tr. 451.

The ALJ stated that he gave "little weight" to the opinion of Dr. McCrady because the opinion was not supported by the medical evidence of record, was inconsistent with Young's treating physician, Dr. El-Khoury, and because Dr. McCrady did not offer any rationale for the impairments he based his opinion on. Tr. 22.

First, and most importantly, the ALJ afforded little weight to Dr. McCrady's opinion, which is different than no weight. Even with the little weight given to Dr. McCrady's opinion, it would appear that it would meet the "de minimis hurdle" for determination of a severe impairment at Step Two, i.e., it shows that Young's claims are not " 'totally groundless' solely from a medical standpoint." *Mack v. Colvin*, 3:12CV00115, 2013 WL 3935057 (S.D. Ohio July 30, 2013) *report and recommendation adopted,* 3:12CV00115, 2013 WL 4457369 (S.D. Ohio Aug. 20, 2013) (medical opinions finding severe impairments that were credited even in part showed that claimant met the "*de minimis* hurdle"). However, since the ALJ failed to indicate what parts of the opinion he gave some or little weight to, it is unclear what impairment or impairments should have been determined to be severe.

Next, the ALJ stated that Dr. McCrady's opinion was inconsistent with the medical evidence. However, the ALJ failed to discuss the medical evidence contained in Dr. McCrady's treatment notes. Upon examination on May 14, 2010, Dr. McCrady found Young had poor heel to toe walking tolerance and poor tandem gait. Tr. 497. Young also reported that he was having difficulties bending. Tr. 495. Dr. McCrady also noted that Young's foot drop was severe. Tr. 498.

11

Dr. McCrady acknowledged that Young had a "complex case regarding disability, as he has no documentation and not much treatment." Tr. 498.  Accordingly, Dr. McCrady stated that, prior to completing a disability assessment he would need to complete more testing.  Id.  He sent Young for an EMG and an MRI.  On June 9, 2010, Dr. McCrady noted that the EMG test showed peripheral polyneuropathy as well as left side sciatic nerve injury consistent with Young's prior gunshot wound.  Tr. 489.   That same day, Dr. McCrady again noted that Young had poor heel to toe walking tolerance and poor tandem gait.  On June 25, 2010, Young had an MRI, which showed osteoarthritis in his right knee and a lateral patellar subluxation in his left knee. Tr. 504.  After these tests, on September 8, 2010, Dr. McCrady completed his opinion finding that Young had various standing and walking limitations.  Tr. 450-451.  Dr. McCrady also noted that Young had been prescribed a brace for walking.  Tr. 451.

Also in September 2010, Dr. McCrady noted that Young had completed six visits for physical therapy and was taking Celebrex and Zanaflex for joint pain.  Tr. 453.  The goals of the physical therapy included decreasing pain and increasing range of motion in Young's legs.  Tr. 475.  During a physical therapy session on July 29, 2010, the physical therapist noted that Young had "[p]ain with sit to stand."  Tr. 46-463.

In addition to the above, during a psychological consultative exam in November 2008, Dr. Leach noted, with regard to Young's appearance, that "[h]e walks slow and has a limp.  It is hard for him to move from a sitting and standing position and exhibits pain symptoms."  Tr. 344.

The ALJ failed to analyze the above evidence and, thus, it is unclear if the ALJ discounted or overlooked it when he determined that Dr. McCrady's opinion was inconsistent with the medical evidence.  A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of

12

fact do not build an accurate and logical bridge between the evidence and the result." *Freeman v. Comm'r of Soc. Sec.*, 1:12-CV-02284, 2013 WL 3480343 (N.D. Ohio July 10, 2013); (*citing Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D.Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue,* 2012 WL 5383120 (E.D.Mich. Nov.1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* 2011 WL 6130824 (S.D.Ohio Nov.15, 2011); *Gilliam v. Astrue,* 2010 WL 2837260 (E.D.Tenn. July 19, 2010); *Hook v. Astrue,* 2010 WL 2929562 (N.D.Ohio July 9, 2010)). Accordingly, as the ALJ failed to discuss the treatment notes of Dr. McCrady, Young's physical therapy, the diagnoses of McCrady and Dr. El-Khoury, and the observation of Dr. Leach, the ALJ's stated reasons for discounting Dr. McCrady's opinion do not build an accurate and logical bridge between the evidence and the result.

The ALJ also stated that he gave little weight to Dr. McCrady's opinion because it was inconsistent with Dr. El-Khoury's treatment notes. Tr. 22. Young treated with Dr. El-Khoury from 2008 through 2010 primarily for his diabetes, hypertension, hyperlipidemia, and OSA. Tr. 303-321, 329, 335-338, 374-384, 400-403, 443-446, 465-468. As stated above, Dr. El-Khoury diagnosed Young with drop foot and bilateral knee pain. Tr. 465. However, other than that diagnosis and reports that Young was engaging in physical therapy, nothing was reported to Dr. El-Khoury with regard to those conditions. An inference of nonseverity can be drawn where a doctor is silent about the physical and/or objective findings. *See Crady v. Secretary of Health and Human Servs.*, 835 F.2d 617, 620-21 (6th Cir. 1987) (per curiam); *Villarreal v. Secretary of Health and Human Servs.*, 818 F.2d 461, 464 (6th Cir. 1987) (per curiam); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988 (per curiam).

Additionally, once in May 2008, Dr. El-Khoury stated summarily in treatment notes that Young is "employable." Tr. 305, 316. Although the ALJ pointed out that the issue of employability is reserved to the Commissioner, he stated that Dr. El-Khoury's statement is "probative to the extent [they indicate] that [Young's] medical impairments do not significantly affect his ability to perform employment functions." Tr. 22. There are several problems with the ALJ's analysis of Dr. El-Khoury's cursory opinion. First, even if the ALJ gave credit to the statement that Young was "employable," it does not automatically follow that that none of Young's impairments were severe. Second, Dr. El-Khoury's statement with regard to employability was made in 2008, prior to Young's 2010 MRI, EMG, and visits with Dr. McCrady. Finally, Young continued to treat with Dr. El-Khoury in 2009 and 2010 and Dr. El-Khoury did not continue to make the statement that Young was "employable" in any of his subsequent treatment notes. Accordingly, in making the determination that Dr. McCrady's opinion is inconsistent with Dr. El-Khoury's notes, partially because Dr. El-Khoury once stated that Young was employable, the ALJ again failed to build an accurate and logical bridge between the evidence and the result.

The ALJ's failure to build an accurate and logical bridge between the evidence and his determination that Young did not meet the Step Two "*de minimis* hurdle" of showing that his claims are not " 'totally groundless' solely from a medical standpoint" prevents adequate review of the ALJ's decision. Thus, the undersigned cannot determine at this time whether substantial evidence supports the ALJ's decision and remand is appropriate.

**Obstructive Sleep Apnea.** Substantial evidence supports the ALJ's finding that Young's Obstructive Sleep Apnea ("OSA") was not a severe impairment. In contrast to the conditions mentioned above, which the ALJ did not address at all, the ALJ found Young's OSA be a

14

medically determinable impairment (Tr. 18). Also in contrast to the conditions mentioned above, other than the diagnosis of OSA, there is no medical opinion evidence that Young's OSA caused any functional limitations. *Foster v. Bowen,* 853 F.2d 483, 489 (6th Cir.1988) (the mere diagnosis of an impairment says nothing about the extent of limitation that the impairment imposes). Young does not argue that any medical opinion evidence, including Dr. McCrady's opinion, supports any functional limitations based upon his OSA. Young merely speculates that his OSA "would likely result in some level of exertional limitation."[6] Doc. 16, p. 14. Young has the burden of showing that his OSA imposed limitations on his ability to work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (claimant retains burden of proof through step four). Accordingly, substantial evidence supports the ALJ's finding that Young's OSA is not a severe impairment.

---

[6] Young also complains that the ALJ discussed Young's non-compliance with the CPAP in the opinion. Young stated that before an ALJ can properly analyze the effect of compliance, the ALJ must first find the impairment to be severe and disabling. Doc. 16, p. 16. The Court need not address this argument, however, because the Court finds that the ALJ's decision that the OSA is non-severe is otherwise supported by substantial evidence without the need to address the issue of non-compliance.

## VII. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be **REVERSED and REMANDED.**[7]

Dated: April 9, 2014

*Kathleen B. Burke*
Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[7] The recommendation to remand is not a determination by the undersigned that Young was disabled during any of the relevant time periods.

16